UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

VICTORIA RICHARDSON,

       Plaintiff,

v.                                    Case No.: 4:12CV25

WILLIAM SNEIDER AND
ASSOCIATES, LLC,

       Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Victoria Richardson's Motion for Default Judgment against Defendant William Sneider and Associates, LLC ("William Sneider"). ECF No. 4. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), Richardson's motion was referred to the undersigned United States Magistrate Judge. ECF No. 12. Based on Richardson's arguments at hearing, the record, and the findings contained herein, the undersigned RECOMMENDS that Richardson's motion for default judgment be GRANTED for Counts I through VI, that Richardson's Motion to Voluntarily Dismiss Count VII be GRANTED, and that default judgment be entered against Defendant William Sneider.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2012, Plaintiff Victoria Richardson filed a Complaint against William Sneider, Jane Roe, and John Doe. ECF No.

1.  Richardson voluntarily dismissed William Sneider employees Jane Roe, also known as Morgan Taylor, and John Doe, also known as John Williams, because she could not ascertain their identities,[1] leaving William Sneider as the only remaining defendant.  ECF Nos. 5, 8.  William Sneider is a debt collection agency incorporated in Georgia with its principal place of business in Georgia.  Compl. 2, ECF No. 1.  Counts I through VI of the Complaint seek relief against William Sneider for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Plaintiff seeks to voluntarily dismiss Count VII, which originally sought relief against William Sneider under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[2]  ECF No. 15.

Specifically, Count I seeks relief under 15 U.S.C. § 1692g for failure to give written notice of the debt.  Count II alleges violations of 15 U.S.C. §§ 1692d(6) and 1692e(11) for failure to meaningfully disclose the company's identity.  Count III asserts that William Sneider threatened to take legal action that cannot legally be taken or that it did not intend to take, in violation of

---

[1]  Plaintiff asserts that the employees used aliases in their communications with her and that she could not ascertain their true identities because they failed to respond to the Complaint.  ECF No. 8.

[2]  On July 3, 2012, the Court issued an Order directing Plaintiff to show cause as to why her claim under the TCPA should not be dismissed in light of Gray v. Wittstadt Title & Escrow Co., LLC, No. 4:11CV111, 2011 WL 6139521 (E.D. Va. Nov. 28, 2011) (holding that the TCPA does not apply to debt collectors).  ECF No. 13.  Plaintiff subsequently petitioned the Court to dismiss this count.  ECF No. 15.

15 U.S.C. § 1692e(5). In Count IV, Plaintiff claims that William Sneider violated 15 U.S.C. § 1692 by falsely representing that an individual is an attorney. Count V charges William Sneider with having unauthorized contact with a third party, which is proscribed by 15 U.S.C. § 1692c(b). Count VI alleges that William Sneider used false representations or deceptive means in violation of 15 U.S.C. § 1692e(10). Plaintiff seeks $1,000 of statutory damages under 15 U.S.C. § 1692k, $8,387.50 in reasonable attorney's fees, and $380 in court costs.

According to the Complaint, Plaintiff fell behind on her bills and applied online for a $500 installment loan through ThinkCash, a loan program controlled by ThinkFinance and First Bank of Delaware.[3] Plaintiff preauthorized electronic fund transfers from her bank account to repay the loan in installments. Around September or October 2010, Plaintiff could no longer afford the payments. As Plaintiff explained in her sworn testimony, her bank closed her checking account due to the multiple overdrafts that resulted from these automatic withdrawals. Plaintiff subsequently defaulted on the loan, and the obligation was eventually sold to a third party debt collector, William Sneider. Between May 26, 2011,

---

[3] ThinkCash was subject to a cease and desist order and civil sanctions by the Federal Deposit Insurance Corporation in 2008 for engaging in unsafe or unsound practices. See Compl. 3, ECF No. 1; In the Matter of First Bank of Delaware, Wilmington, Delaware and Compucredit Corporation, Atlanta, Georgia, FDIC 07-256b and FDIC 07-257k.

-3-

and July 7, 2011, William Sneider called Plaintiff on thirteen occasions. An employee of William Sneider placed six of the calls. The remaining seven were automated calls generated from an automated telephone dialing system. Plaintiff did not answer these calls, but voice messages were left on each occasion. Defendant also placed one automated call to Plaintiff's place of employment, which Plaintiff's supervisor answered. Plaintiff never authorized third party calls, and the call was not made to acquire location information, as permitted by 15 U.S.C. § 1692b. The calls threatened "a possible service warrant" for "deposit account fraud" and "depository check fraud" in Newport News,[4] yet Defendant never filed a complaint against Plaintiff. On July 21, 2011, Plaintiff placed a call to William Sneider and spoke to an employee named John Williams. Williams informed the plaintiff that the case had

---

[4] Of the thirteen voice messages on Plaintiff's answering machine, seven were automated. These automated messages stated: "This message is only for Victoria Richardson. Please be advised that your name and social security number have been attached to a pending investigation that has been filed in my office concerning an alleged depository check fraud item. If you have recently received mail about documentation stating a court date, please follow up with your local magistrate court. Please call us back at 1-800-287-5356, extension 1000. Thank you." The other six messages were left by an employee of William Sneider. These messages stated: "This message is intended for Victoria Richardson. This is investigator Morgan Taylor with the office of William Sneider and Associates. My office needs to speak with you with regards to a possible service warrant due to be filed in Newport News City for deposit account fraud. Contact this office immediately to avoid further processing on the case that's pending against you. My office may be reached at 800-287-5356, extension 2752." Compl. ex. 3, ECF No. 1.

been referred to an attorney named Paul Weinstein, that William Sneider was an attorney-based firm, and that the company demanded payment on the Thinkcash debt.  At no time did a written notice of debt follow the telephone calls.  Plaintiff asserts that these calls caused her embarrassment, public humiliation at her workplace, and emotional distress.

William Sneider was properly served with the Complaint pursuant to Virginia Code § 12.1-19.1.  ECF Nos. 2-3.  The defendant never responded, and Plaintiff filed a Request for Entry of Default and a Motion for Default Judgment on April 5, 2012.  ECF No. 4.  On April 6, 2012, the Clerk entered default against William Sneider.  ECF No. 9.  On July 3, 2012, the Court issued an Order directing Plaintiff to set a hearing date for her motion and to notify all parties of said date.  ECF No. 13.  The Order also directed Plaintiff to submit certain documentation in support of her claim for damages.  On July 6, 2012, the Plaintiff filed a Motion for Voluntary Dismissal of Count VII.  ECF No. 15.  The Court conducted a hearing on July 16, 2012, at 10:00 a.m.  Sarah Bland, Esq., appeared at the hearing on behalf of Richardson.  Ms. Bland offered argument concerning the validity of the claims and elicited live testimony from Plaintiff.  William Sneider failed to appear.

## II.  **RULE 55 STANDARD**

When a party against whom judgment is sought fails to file a responsive pleading or otherwise defend the action, the plaintiff

-5-

may request, and the court may enter, default judgment against the nonresponsive party. Fed. R. Civ. P. 55. William Sneider has not filed responsive pleadings or appeared in this matter. See Fed. R. Civ. P. 12(a) (giving a defendant twenty-one days after receiving service of the complaint to serve an answer). Pursuant to Rule 55(a), Plaintiff requested the Clerk of the Court to enter default against William Sneider on April 5, 2012. ECF No. 15. The Clerk entered default against William Sneider on April 6, 2012. Plaintiff also filed a Motion for Default Judgment.

A plaintiff is not entitled to default judgment simply because the defendant fails to respond to the complaint. "A default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (citing Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (quoting Thomson v. Wooster, 114 U.S. 104, 113 (1885))). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a claim); GlobalSantaFe Corp. v. GlobalSantaFe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default . . . the appropriate inquiry is whether the facts alleged [in the complaint]

-6-

state a claim."). Although the Court "must accept the facts alleged in a complaint as true and construe them in the light most favorable to the plaintiff," Coleman v. Md. App., 626 F.3d 187, 188 (4th Cir. 2010), threadbare "legal conclusion[s] . . . [are] not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009). Moreover, the well-pleaded facts of a complaint must permit the court to infer the plausibility rather than the mere possibility of misconduct entitling the plaintiff to relief. Id.; Coleman, 626 F.3d at 190; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

### III. JURISDICTION AND VENUE

#### A. Subject Matter Jurisdiction

The Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting parties before it can render a default judgment. Venue must also be proper. The Court has subject matter jurisdiction over Richardson's FDCPA claims under 15 U.S.C. § 1692k(d), which states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs." Because the alleged violations occurred less than one year before filing, this Court has subject matter jurisdiction over this civil action and the claims are not time-barred.

-7-

## B. **Personal Jurisdiction**

Neither Richardson's Complaint nor her Motion for Default Judgment alleges facts in support of this Court's ability to exercise personal jurisdiction over William Sneider. Nevertheless, it appears as if personal jurisdiction is present in this case.  Under Federal Rule of Civil Procedure 4(k)(1)(A), a United States district court has personal jurisdiction over a defendant if a state court in that district would have personal jurisdiction had the case been brought in state court.  Virginia Code § 8.01-328.1(A)(1) grants personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth."[5]   A single act that is "significant" and "demonstrates purposeful activity in Virginia" suffices, although "no bright-line rule exists to distinguish the level of activity sufficient to confer jurisdiction from the level that falls short."  Prod. Group Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004).

Although Defendant was never physically present in Virginia, physical presence in the forum state is not required.  See Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 314 (4th

---

[5] A "'person' includes . . . a corporation, partnership, association or any other legal or commercial entity, whether or not a citizen or domiciliary of this Commonwealth and whether or not organized under the laws of this Commonwealth." Va. Code § 8.01-328.

-8-

Cir. 1982). William Sneider purchased a loan obligation in which the plaintiff contracted for the loan in Virginia, received the loan proceeds in Virginia, and partially repaid the loan in Virginia. The defendant thus purposely availed himself of the "benefits and protections" of Virginia law. Hanson v. Denckla, 357 U .S. 235, 253 (1958). Additionally, the defendant called Plaintiff's cell phone and place of employment attempting to collect the debt. While a phone call "is not synonymous with a transaction," Turnbull v. Desrosier, 61 Va. Cir. 375, 380 (2003), these calls are properly categorized as a business transaction because the defendant was eliciting performance on a contract. See Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 512 S.E.2d 560, 563, 257 Va. 315, 321 (Va. 1999) (upholding the circuit court's exercise of personal jurisdiction, in part because the defendant's employees had telephone conversations with the Virginia plaintiff concerning the sale and repair of goods). Placing the telephone calls was a significant, purposeful business activity directed toward the state. These calls form the basis of the instant suit. Va. Code § 8.01-328.1 (C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."); Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 761 F. Supp. 423, 425 (E.D. Va. 1991).

Personal jurisdiction is therefore proper under the applicable Virginia law.

Virginia long-arm statutes confer personal jurisdiction to the full extent permitted by the Constitution.  See, e.g., Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282, 286 n.1 (4th Cir. 1987); Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com, 128 F. Supp. 2d 340 (E.D. Va. 2001).  Yet it is still necessary for the Court to inquire whether granting personal jurisdiction in this case would violate due process.  Goldman, 337 F. Supp. 2d at 793 ("Resolution of a personal jurisdiction challenge by a non-resident defendant requires a two-step inquiry. First, a court must assess whether Virginia's long-arm statute authorizes jurisdiction over the defendant in the circumstances presented.  Second, it must determine whether due process forbids the exercise of jurisdiction in those circumstances.") (internal citations omitted).  Due process is satisfied when a non-resident defendant has established "minimum contacts" with the forum state.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  If the defendant's minimum contacts with the forum state form the basis of the instant suit, a court will have specific jurisdiction over the defendant if it "purposely avail[ed] itself of the privilege of conducting activities within the forum state ... to ensure that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,'

-10-

or 'attenuated' contacts." <u>Alitalia-Linee Aeree Italiane S.p.A</u>, 128 F. Supp. 2d at 349 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." <u>Rossman</u>, 832 F.2d at 286 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

William Sneider purchased Plaintiff's obligation assumedly with the knowledge that Plaintiff was a resident of Virginia and had applied for and received the proceeds of the loan there. William Sneider therefore availed itself of the privilege of conducting business in the state.   Further, Defendant reached across state lines by calling Plaintiff's cell phone and employer's phone, both of which are based in Virginia.   Notably, the voice messages that the defendant's employee left on Plaintiff's answering machine threatened to file suit in Newport News, Virginia.[6]  These threats demonstrate that Defendant contemplated using the Virginia law and courts to its advantage.   William Sneider therefore has no cause for surprise at being sued in Virginia, and, in fact, "should [have] reasonably anticipate[d]

---

[6] Further, the FDCPA limits the fora in which a debt collector may bring suit to collect a debt to the districts in which a debtor possesses real property, in which the contract establishing the debt was signed, or in which the debtor resides.   15 U.S.C. § 1692i.   In the instant case, this means that William Sneider could properly bring suit only in Virginia.

being haled into court []here." Rossman, 832 F.2d at 286. The foregoing facts show that the defendant's contacts with the state are deliberate and continuous and are in no way "'random,' 'fortuitous,' or 'attenuated.'" Alitalia-Linee Aeree Italiane S.p.A, 128 F. Supp. 2d at 349 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Accordingly, the Court properly exercises personal jurisdiction over the defendant.

### C. Venue

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, which allows plaintiffs to bring suit in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." The causes of action in the case all arise from the calls that William Sneider placed to telephones located in the Eastern District of Virginia; Plaintiff resides in Newport News, Virginia, and her place of employment is located in Hampton, Virginia. Further, William Sneider knowingly purchased a debt obligation that arose in this district. Plaintiff partially performed on the loan contract in this district by making installment payments before William Sneider purchased it. Accordingly, venue is proper in this district.

### IV. ANALYSIS OF PLAINTIFF'S CLAIMS

A plaintiff establishes a prima facie case under the FDCPA by demonstrating four elements: (1) that the plaintiff is a natural person who has been harmed by violations of the FDCPA, or that the

-12-

plaintiff is a "consumer" under 15 U.S.C. § 1692a(3) for alleged violations of 15 U.S.C. § 1692c (communication in connection with debt collection); (2) that the debt arose out of a transaction primarily for personal, family, or household purposes as required under 15 U.S.C. § 1692a(5); (3) that the defendant is a debt collector within the definition provided by 15 U.S.C. § 1692a(6); and (4) that the defendant has violated a provision of the FDCPA. Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 414 (E.D. Va. 1997).

Plaintiff has clearly established the first three elements in the Complaint. The Complaint alleges that Plaintiff is a natural person and a "consumer" under 15 U.S.C. § 1692a(3).[7] Further, Plaintiff contends that she suffered embarrassment, public humiliation at her workplace, and emotional distress as a result of the alleged violations. Plaintiff therefore has satisfied the first element of her prima facie case. Additionally, Plaintiff applied for the loan because she fell behind on her bills, which satisfies the requirement that the debt be acquired primarily for personal, family, or household purposes.

Finally, the Complaint alleges that William Sneider is a debt collector as defined by 15 U.S.C. § 1692a(6). According to the statute, "The term 'debt collector' means any person who uses any

---

[7] According to 15 U.S.C. § 1692a(3), a consumer is "any natural person obligated or allegedly obligated to pay any debt."

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The Complaint states that William Sneider's principal purpose "is the collection of debts using the mails and telephone, and [that] William Sneider regularly attempts to collect debts alleged to be due another." Compl. 2, ECF No. 1. Accordingly, Plaintiff has established the third element of the prima facie case.

To satisfy the fourth element, Plaintiff delineates six separate violations of the FDCPA in Counts I through VI of the Complaint. Each of these violations states a separate cause of action and therefore must be analyzed individually to determine if default judgment is appropriate in each instance.

A. Sufficiency of Allegations in Count I

Count I alleges a violation of 15 U.S.C. § 1692g, which requires the debt collector to validate the debt to be collected. Specifically, the debt collector must send written notice to the debtor within five days of the initial communication stating: (1) the amount of the debt owed, (2) the name of the creditor, and (3) the method by which the debtor may contest the obligation.[8]  15

---

[8] The debt collector also has the option of providing this information during the initial communication. See id.

U.S.C. § 1692g.  Plaintiff testified that William Sneider never mailed her a validation of the debt and that the initial communication did not disclose this information.  Compl. 5, ECF No. 1.  Recordings of the voice messages William Sneider left on Plaintiff's answering machine corroborate her testimony.  Compl. ex. 3, ECF No 1.  Because the Court accepts these allegations as true, as required under the standard for default judgment, see Coleman, 626 F.3d at 188, Count I states a valid cause of action under the FDCPA.

## B. Sufficiency of Allegations in Count II

Plaintiff next asserts that William Sneider violated 15 U.S.C. §§ 1692d(6) and 1692e(11) because it failed to meaningfully disclose its identity during the telephone calls to Plaintiff's cell phone.  First, 15 U.S.C. § 1692d(6) states that "the placement of telephone calls without meaningful disclosure of the caller's identity" constitutes harassment or abuse under the FDCPA. Additionally, under 15 U.S.C. § 1692e, a debt collector may not make or engage in false or misleading representations.  The statute offers examples of what acts or omissions qualify as violations of this section.  Both the failure to reveal "in [the] initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" and "the failure to disclose in subsequent communications that the communication is from a debt collector" are listed as

-15-

violations of this section.  15 U.S.C. § 1692e(11).  Plaintiff testified that William Sneider never disclosed its identity during either the initial or subsequent communications.  Although "investigator" Morgan Taylor, via voice messages left on the plaintiff's answering machine, stated that she was an employee of William Sneider, Ms. Taylor never explained that William Sneider is a debt collector attempting to collect a debt.  It was not until Plaintiff called the defendant herself and spoke with John Williams that she learned that William Sneider is a debt collection agency. Both in the initial and subsequent communications, the defendant failed to reveal its status and purpose as a debt collector.  Count II therefore validly states a cause of action under the FDCPA.

### C. Sufficiency of Allegations in Count III

In Count III, Plaintiff alleges several violations of 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken."  "[C]ollection notices violate § 1692e(5) if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action."  United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996).  The Fourth Circuit employs the "least sophisticated debtor" standard in evaluating violations of this provision, which is designed to "protect[] all consumers, the gullible as well as the shrewd."  Id.  Therefore, "[w]hether a

-16-

particular representation or means of collection is deceptive is to be judged in terms of its tendency to mislead the least sophisticated recipient of the debt collector's letters." United States v. Nat'l Fin. Servs., Inc., 820 F. Supp. 228, 232 (D. Md. 1993), aff'd, 98 F.3d 131 (4th Cir. 1996).

Plaintiff contends that William Sneider violated this provision in three ways: (1) by communicating to Plaintiff that her case had been referred to a lawyer by the name of Paul Weinstein, who, according to Plaintiff, is "a non-existent attorney," Compl. 7, ECF No. 1.; (2) by threatening to file suit in Virginia when William Sneider was not registered to transact business in Virginia and therefore unable to maintain any proceeding in the state pursuant to Virginia Code § 13.1-1057; and (3) by threatening to file against Plaintiff a cause of action that does not exist in the state of Virginia.

First, John Williams communicated to Plaintiff that her case had been referred to an attorney named Paul Weinstein. Plaintiff avers that Paul Weinstein is a "non-existent attorney" because no one by that name[9] is licensed to practice law in either Virginia or

---

[9] Plaintiff obtained letters from both the State Bar of Georgia and the Virginia State Bar stating that no lawyer by the name of "Paul Weinstein" or the alternate spelling "Paul Wienstein" is licensed to practice in those states. Compl. exs. 4, 5, ECF No. 1.

Georgia.[10]  Compl. exs. 4, 5, ECF No. 1.  Plaintiff therefore
contends that, by implying that an attorney named Paul Weinstein
was going to file suit against her, William Sneider threatened
legal action that it could not legally take.  It is possible that
William Sneider retained an attorney named Paul Weinstein who was
taking steps to either become licensed in Virginia or to appear pro
hac vice pursuant to Va. Sup. Ct. Rule 1A:4.  Yet because Paul
Weinstein is not currently admitted to practice in Virginia,
William Sneider had no immediate ability to prosecute the debt in
the manner threatened.  Under the least sophisticated debtor
standard, Plaintiff reasonably believed that William Sneider was
threatening immediate legal action when an employee told her that
the case had been referred to an attorney.  Therefore, William
Sneider violated 15 U.S.C. § 1692e(5) when it communicated to
Plaintiff that her case had been referred to attorney Paul
Weinstein.  See Rosa v. Gaynor, 784 F. Supp. 1, 4 (D. Conn. 1989)
("Plaintiff notes that the letter fails to disclose that defendant
is not admitted to practice in Connecticut, so that the letter
could result in the false impression . . . that defendant could and
would proceed to file suit in Connecticut immediately.").

---

[10] The FDCPA sharply limits the debt collector's choice of
forum.  15 U.S.C. § 1692i.  In this case, venue would be proper
only in the Eastern District of Virginia.  See id. Therefore, for
William Sneider to file suit against Plaintiff, it would first need
to secure representation by counsel permitted to practice law in
Virginia.

Count III also alleges a violation of the FDCPA because William Sneider is not registered to transact business in the state of Virginia.  According to Virginia Code § 13.1-1057, "A foreign limited liability company transacting business in the Commonwealth may not maintain any action, suit, or proceeding in any court of the Commonwealth until it has registered in the Commonwealth."  The Virginia Supreme Court has recently held that a foreign limited liability company may file suit in Virginia without first registering for business as long as it registers before the final disposition of the case.  Nolte v. MT Tech. Enters., LLC, 726 S.E.2d 339, 345 (Va. 2012).  However, the least sophisticated debtor would assume that one with the ability to file suit would also have the ability to see its conclusion without non-judicial filings.  Moreover, "[n]umerous cases support the principle that threats of legal action by collection agencies unable to take such action because of the lack of a license to practice in the target debtor's jurisdiction constitutes [sic] a violation of at least one section of 15 U.S.C. § 1692e."  In re Belile, 209 B.R. 658, 662 (Bankr. E.D. Pa. 1997); see Newman v. Checkrite Cal., Inc., 912 F. Supp. 1354, 1379-80 (E.D. Cal. 1995); Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404, 1414 (D. Conn. 1990); Rosa, 784 F. Supp. at 4.  By threatening immediate legal action, William Sneider implied that it had the present ability to file suit against Plaintiff and to see the case through to the entry of judgment.

-19-

William Sneider was not registered to do business at the time these statements were made and thus threatened legal action it could not legally take. Accordingly, Plaintiff states a second valid cause of action under 15 U.S.C. § 1692e(5).

Plaintiff further contends that William Sneider violated this provision because the threatened causes of action do not exist in Virginia, namely "deposit account fraud" and "depository check fraud." Virginia Code § 8.01-27 does create a civil action when a party who has promised to pay an obligation fails to do so. Yet Defendant's use of the terms "possible service warrant," "fraud," and "investigator," see supra note 4, insinuates that criminal prosecution was pending. Notably, Plaintiff testified that both she and her supervisor, who answered the phone when the defendant called Plaintiff's place of employment, believed that her arrest was imminent based on these calls. Although Virginia Code § 18.2-181 does criminalize intentionally writing a bad check, William Sneider has no authority to instigate a criminal investigation or to bring criminal charges against Plaintiff. There is no evidence that William Sneider ever contacted, or intended to contact, the police about this matter. Further, any criminal charge would most likely be baseless; Plaintiff testified that she stopped making payments after the bank closed her checking account because of the overdrafts that resulted from these withdrawals. Threatening unfounded criminal action without the

-20-

authority or intention to follow through is an obvious violation of the FDCPA and is exactly the type of behavior the Act was designed to quash. Plaintiff therefore states valid causes of action under this provision of the FDCPA.

### D. Sufficiency of Allegations in Count IV

Count IV is similar to Count III in that it relies on the allegation that Paul Weinstein is not an attorney licensed in Virginia or Georgia. Here, Plaintiff claims a violation under 15 U.S.C. § 1692e(3), which states that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" is prohibited as a false or misleading representation. Plaintiff asserts that William Sneider's employee John Williams "represented to Plaintiff that her case was assigned to an attorney, 'Paul Weinstein,' who if existent as an individual, is not an attorney licensed to practice in either Georgia or Virginia and could never file suit against Plaintiff in any Virginia Court." Williams created the impression that an attorney was immediately available and prepared to file suit. No Paul Weinstein is licensed in Virginia or Georgia and no suit was ever filed against Plaintiff. The least sophisticated debtor would have been misled by this representation. Though evidence of actual deception is not necessary, Nat'l Fin. Services, Inc., 98 F.3d at 139, Plaintiff testified that she believed an attorney would

-21-

immediately initiate a suit against her based on her communication with Williams.

Accordingly, Count IV states a valid cause of action under 15 U.S.C. 1692e(3).

### E. Sufficiency of Allegations in Count V

Count V states that William Sneider violated 15 U.S.C. § 1692c(b) when it used an automated telephone dialing system to call Plaintiff's place of employment. This subsection prohibits a debt collector from communicating to a third party about the debtor's obligation without express consent from the debtor, permission from a court, or "as reasonably necessary to effectuate a postjudgment judicial remedy." 15 U.S.C. § 1692c(b). The exception to this statute allows a debt collector to contact a third party "for the purpose of acquiring location information," provided that the caller identifies himself, refrains from stating that the consumer owes any debt, and makes only one call, with limited exceptions. 15 U.S.C. § 1692b.

Plaintiff testified that the telephone call to her place of employment was not for the purpose of acquiring location information[11] and thus does not fall under the exception. The call was similar to the automated calls made to Plaintiff's cell phone

---

[11] "The term 'location information' means a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

-22-

number, threatening a "possible service warrant" for "deposit account fraud" and "depository check fraud" in Newport News. Additionally, Plaintiff stated that she did not give William Sneider permission to contact a third party. Compl. 8, ECF No. 1. Plaintiff's supervisor, Anthony Taylor, answered the call, causing Plaintiff "embarrassment, public humiliation at her place of employment and emotional distress." Compl. 5, ECF No. 1. The nature of the call was particularly offensive, insinuating that Plaintiff had criminal charges pending against her and that she was about to be arrested.

Accordingly, Count V appropriately states a cause of action, and the Court may properly grant default judgment on this claim.

### F. Sufficiency of Allegations in Count VI

Count VI states that "Defendant's conduct in its totality" violated 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Compl. 8, ECF No. 1. Specifically, Plaintiff concludes that William Sneider violated this provision by failing to meaningfully disclose its identity and by threatening legal action that could not be taken in Virginia by an attorney not licensed to practice in Virginia. Id. The Fourth Circuit has recognized that a violation of 15 U.S.C. § 1692e(5) (falsely threatening legal action) also constitutes a violation of 15 U.S.C. § 1692e(10). Nat'l Fin.

-23-

Services, Inc., 98 F.3d at 138 ("Because we concur with the district court's finding that the notices falsely threatened legal action, we concur with the court's conclusion that the defendants also violated § 1692e(10)."). "Courts have consistently found that falsely representing that unpaid debts would be referred to an attorney for immediate legal action is a deceptive practice . . . [and] the false representation that a lawyer may be called in may unjustifiably frighten an unsophisticated consumer into paying a debt that he or she does not owe." Id. at 138-39. See Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 416 (E.D. Va. 1997). "Of course, the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." Nat'l Fin. Services, Inc., 98 F.3d at 139. Because William Sneider deceptively represented that it would take legal action that it was unable to take and misled Plaintiff into believing that Paul Weinstein was an attorney that could immediately file suit against her, Count VI states a valid cause of action under 15 U.S.C. § 1692e(10).

## III. Damages

Having determined that the Complaint states valid causes of under the FDCPA, the Court must next determine the appropriate relief. For an individual plaintiff, 15 U.S.C. § 1692k(a) provides for three types of available damages: (1) actual damages sustained as a cause of the violation(s); (2) "additional damages as the

-24-

court may allow, but not exceeding $1,000," and; (3) "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." In the instant case, Plaintiff requests relief under (2) and (3). Upon request for default judgment, a court may not award an amount in excess of that sought in the pleadings and must make an independent determination of the appropriate amount of damages to be awarded. See Fed. R. Civ. P. 8(b)(6); 54(c).

## A. "Additional Damages as the Court May Allow"

Plaintiff prays that the Court award her the maximum statutory damages of $1,000.[12] The decision whether to award additional damages, and in what amount, "is committed to the sound discretion of the district court." Clomon v. Jackson, 988 F.2d 1314, 1322 (2d Cir. 1993). The FDCPA instructs district courts to consider certain factors in determining statutory damages: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," "among other relevant factors." 15 U.S.C. § 1692k(b)(1). Further, it is well established that under this

---

[12] In the Complaint, Plaintiff claims that the maximum statutory damages are $3,000. Compl. 9, ECF No. 1. Without explaining her change of position, Plaintiff asserts in her Motion for Default Judgment that the maximum statutory damages are $1,000. ECF No. 4. The FDCPA clearly states that $1,000 is the maximum "additional damages" a plaintiff may receive. The statute does not provide for treble damages. 15 U.S.C. § 1692k(a).

provision a successful Plaintiff may collect $1,000 per proceeding, not $1,000 per violation.  See, e.g., Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir. 1994) ("This absence of an intent contrary to the plain meaning of the words indicates that Congress intended to limit "other damages" to $1,000 per proceeding, not to $1,000 per violation.") (listing cases).

In the instant case, William Sneider called Plaintiff's cell phone thirteen times and her place of employment one time within one and one half months. Compl. 3, ECF No. 1.  The content of the voice message recordings shows an egregious disregard for the FDCPA: Defendant's employees failed to identify themselves or state their purpose, failed to validate the debt in writing, and used scare tactics by threatening legal action that they could not and did not take.[13] Calling Plaintiff at her place of employment with threats of criminal charges was a particularly disdainful act and an abuse of William Sneider's status as a debt collector.  That both Plaintiff and her supervisor believed, as a result of these calls, Plaintiff's arrest was imminent speaks volumes about the impropriety of William Sneider's debt collection practices.  This

---

[13] Though not part of the justification for its award, the Court, on its own motion, discovered that there are eleven complaints filed against William Sneider with the Better Business Bureau, ten of which involve "Billing/Collection Issues," and that the company has an overall "D" rating.  Better Business Bureau, http://www.bbb.org/atlanta/business-reviews/collection-agencies/william-sneider-and-associates-in-tucker-ga-27403323 (last visited July 23, 2012).

noncompliance signals to the Court that William Sneider harbors an indifference to the spirit and the letter of the FDCPA. Additionally, "the Fourth Circuit has exhibited a lack of judicial tolerance for failure to comply with the FDCPA." Creighton, 981 F. Supp. at 417 (citing United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131 (4th Cir. 1996)). For these reasons, the Court RECOMMENDS that Plaintiff be awarded maximum statutory damages of $1,000.

### B. Attorney's Fees

In addition to statutory damages, Plaintiff also asks the Court to award $8,387.50 in attorney's fees. The FDCPA permits recovery of reasonable attorney's fees "in the case of any successful action." The Fourth Circuit has determined that an action is successful any time that a plaintiff establishes the fact of liability, regardless of whether damages are awarded. See Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629 (4th Cir. 1995). Plaintiff's claim for attorney's fees is not barred by the fact that she is represented by a Legal Aid attorney who does not charge a fee. See Brinn v. Tidewater Transp. Dist. Comm'n, 242 F.3d 227, 234-35 (4th Cir. 2001) ("[C]ourts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding.").

The Supreme Court has remarked that "'the most critical factor' in determining the reasonableness of a fee award 'is the

degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 103 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Generally a district court will determine the reasonableness of attorney's fees based on the lodestar analysis—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  Carroll, 53 F.3d at 628 (citing Hensley, 461 U.S. at 433).  To determine the reasonableness of the hourly rate and time expended, district courts will look to twelve guiding factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC,  560 F.3d 235, 243-44 (4th Cir. 2009) (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  Moreover, to demonstrate that an hourly rate is reasonable, the party requesting fees must produce "specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)).  Acceptable evidence includes

"affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with their work in the relevant community." Robinson, 560 F.3d at 245. An attorney's own affidavit attesting to the reasonableness of fees charged is insufficient. See Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990).

On July 16, 2012, the Court held a hearing, in part to establish the reasonableness of Plaintiff's request for attorney's fees. Sarah Bland, Esq., Plaintiff's counsel, submitted Court a signed affidavit stating that she has been licensed as an attorney in Virginia since 2005 and is the Managing Attorney of the Peninsula Office of the Legal Aid Society of Eastern Virginia. She has "substantial collections experience in state court," although she had never appeared in federal court or filed a suit arising under the FDCPA prior to this case. Ms. Bland swears in the affidavit that she expended thirty and one-half hours on this case, including time spent on research, travel, communicating with Plaintiff, and drafting and filing documents. The Court notes that Ms. Bland did not include in her calculation the time she spent preparing for, traveling to, and attending the July 16 hearing. Ms. Bland also asserted that a reasonable rate for her representation is $275 per hour. In support of this claim, she submitted the Declaration of Susan M. Rotkis, a respected local attorney who has litigated more than forty federal consumer

-29-

protection cases, including cases arising under the FDCPA. Ms. Rotkis' Declaration stated that the Court has approved her hourly rate of $350 per hour and that her law firm currently bills her clients at $375 per hour based on her education, experience, and expertise. The partners of Ms. Rotkis' law firm, Consumer Litigation Associates, P.C., bill at the rates of $375 and $450 per hour. Ms. Rotkis then stated that, based on Ms. Bland's education and experience, the subject matter of the instant case, and its current posture, "Ms. Bland's hourly rate would be justified at $275-$338."

Applying the twelve factors that inform the lodestar analysis, this Court finds that Ms. Bland's attorney's fees are reasonable. Ms. Bland expended thirty and one half hours on this case. Given the schedule Ms. Bland provided to the Court delineating her expenditure of time and noting that Ms. Bland did not include in her calculation time devoted to the hearing on July 16, this Court finds that the amount of time that counsel spent on this case is reasonable. The hourly rate is also reasonable. Ms. Rotkis' Declaration states that the requested $275 per hour is at the low end of what she believes to be a reasonable fee based on Ms. Bland's education and expertise. Ms. Rotkis is an attorney well-versed in matters arising under the FDCPA and is clearly familiar with the appropriate fees in such cases. This Court gives her Declaration full credibility and finds that Ms. Bland's hourly rate

is conservative and certainly reasonable in these circumstances. The lodestar analysis thus yields $8,387.50 as a reasonable attorney's fee, exactly the figure requested by Plaintiff.

Adherence to the lodestar amount is not mandatory in cases arising under the FDCPA. The plain language of the statute gives district courts discretion in determining the proper award. 15 U.S.C. § 1692k; see Carroll, 53 F.3d at 629 ("[T]he statutory language announces a clear intent to allow district courts wide latitude in the calculation of appropriate fee awards: a "reasonable" fee is to be "determined by the district court," without further statutory qualification."). "It should be clear, then, that § 1692k does not mandate a fee award in the lodestar amount. If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances." Id. Therefore, when the Plaintiff has achieved only limited success, the attorney's fees to be awarded may be less than the lodestar amount. Id. (awarding only $500 in attorney's fees when Plaintiff recovered $50 in an FDCPA action, even though this figure was significantly less than the lodestar amount). Yet in the instant case, where Plaintiff has established multiple violations of the FDCPA, departure from the lodestar figure is not warranted, especially when the defendant, despite notice, did not appear to contest the award.

-31-

Accordingly, this Court RECOMMENDS that Plaintiff be awarded $8,387.50 in reasonable attorney's fees.

## C. Court Costs

Under the FDCPA, a successful claimant may be compensated the costs of the action.  15 U.S.C. § 1692k(a)(3).  Local Civil Rule 54(D) mandates that a party entitled to court costs submit a bill of costs within eleven (11) days from the entry of judgment. "Such bill of costs shall distinctly set forth each item thereof so that the nature of the charge can be readily understood." Loc. Civ. R. 54(D).  After a plaintiff has submitted a bill of costs, including "an itemization and documentation for requested costs in all categories," the defendant may object within eleven (11) days after service of the bill of costs.  Id.

Plaintiff's attorney, Sarah Bland, Esq., submitted an affidavit itemizing the court costs Plaintiff seeks.  Plaintiff prays the Court will grant her $350.00 in civil filing fees and $30.00 for serving process.  Also provided are receipts for each expense.  The Court therefore finds that Plaintiff submitted a timely bill of costs and RECOMMENDS that Plaintiff be awarded court costs. Plaintiff shall serve the defendant with the bill of costs so that it may have an opportunity to object.

## D. Interest

Money judgments rendered in a civil case are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.  Interest is

-32-

calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment" and is compounded annually. Id. The Court RECOMMENDS that Plaintiff be awarded post-judgment interest on the principal at the rate of judgment. Because Plaintiff did not seek pre-judgment interest, the Court is not invited to make an award of pre-judgment interest in this case. Tony Guiffre Distrib. Co., Inc. v. Washington Metro. Area Transit Auth., 740 F.2d 295, 298 (4th Cir. 1984) ("When a [plaintiff] does not ask the trier of fact to consider interest, the court may determine that he is precluded from making the claim.").

## VI. RECOMMENDATION

Plaintiff filed the instant Motion for Default Judgment against William Sneider to recover statutory damages, attorney's fees, and court costs. Plaintiff has sufficiently stated claims against William Sneider pursuant to the Fair Debt Collections Practices Act. For the foregoing reasons, the Court RECOMMENDS:

1) Plaintiff Victoria Richardson's Motion for Default Judgment be GRANTED for Counts I through VI;

2) Plaintiff's Motion to Voluntarily Dismiss Count VII be GRANTED;

3) Judgment be ENTERED in favor of Ms. Richardson and against Defendant William Sneider for the principal amount of $9,387.50;

-33-

4) Plaintiff be DIRECTED to serve William Sneider the bill of costs; and

4) Judgment be ENTERED in favor of Ms. Richardson and against Defendant William Sneider for interest at the rate of judgment, from the date of the final judgment until entry of judgment in this matter.

### IV.  **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b) (1) and Rule 72(b) of the Federal Rules of Civil Procedures:

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules.  See 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72(b) (2).  A party may respond to another party's objections within 14 days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).

2.  A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

-34-

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 24, 2012

-35-